CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 01 2016

JULIA A. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FALLS LAKE NATIONAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Civil Action No. 7:16-CV-00075 ) |
| v. | ) **MEMORANDUM OPINION** ) |
| ISRAEL MARTINEZ, JR., et al., | ) By: Hon. Glen E. Conrad ) Chief United States District Judge |
| Defendants. | ) ) |

In this insurance coverage dispute, Falls Lake National Insurance Company ("Falls Lake") seeks a declaratory judgment that it has no obligation to defend or indemnify Israel Martinez, Jr., Salinas Express, LLC ("Salinas Express"), and SMC Transport, LLC ("SMC") in connection with a separate personal injury action that Brandon Lester filed against Martinez, Salinas Express, SMC, and others in this court. See Lester v. SMC Transport, LLC, No. 7:15-cv-00665 (W.D. Va.) (the "underlying personal injury action"). The case is presently before the court on Falls Lake's motions for partial dismissal of defendants Lester's and Anthony Ray Shifflett's counterclaims, as well as Falls Lake's motion to stay the underlying personal injury action while the instant action is pending. For the reasons set forth below, the motions for partial dismissal will be granted and the motion to stay will be denied.

**Factual Background**

I.  **The Underlying Personal Injury Action**

Before sunrise on October 26, 2015, Lester was traveling southbound on Interstate 81 ("I-81") at approximately mile marker 158.10 in Botetourt County, Virginia. At approximately the same time, Martinez was operating a tractor registered to and owned by SMC (the "SMC

Tractor"), while towing a disabled tractor leased to Salinas Express (the "Salinas Express Tractor"). Martinez then proceeded to make a u-turn out of a rest stop's entrance ramp onto I-81. At the time, Roy Salinas, who was traveling with Martinez at the time, was giving directions and signals to Martinez in order to effectuate this maneuver.

According to Lester's complaint, the entrance ramp is located past a small rise on I-81, which obscured its existence from drivers until they were almost adjacent to it. As he was making a u-turn, Martinez proceeded to block the southbound traffic lanes on I-81. Lester then collided with the SMC Tractor. Lester's disabled vehicle was subsequently hit from behind by another truck, which was driven by Shifflett and owned by CTWWM, Inc. d/b/a Carter's ("Carter's"). Lester was ejected from the vehicle and sustained severe bodily injuries.

Lester's amended complaint contains nine separate counts against Martinez, Salinas Express, and SMC. These counts include claims for negligence, willful and wanton negligence, negligent entrustment, negligent hiring, negligence per se, placard liability, and constructive fraud. Lester seeks compensatory damages in the amount of $7,500,000.00 and punitive damages in the amount of $350,000.00.

On July 8, 2016, Salinas Express filed a third party complaint against Shifflett and Carter's, seeking indemnification or, in the alternative, contribution in the event that Salinas Express has to pay any damages to Lester.

## II. The Insurance Policies

Falls Lake issued a commercial vehicle motor carrier liability policy to Salinas Express, Policy No. ST44000306, for the policy period of May 29, 2015 to May 29, 2016 (the "Salinas Express Policy"). Defendant United Specialty Insurance Company ("United") issued a commercial vehicle motor carrier liability policy to SMC, Policy No. MAT-0003400-3088, with

an effective date of September 11, 2015 (the "SMC Policy"). The Salinas Express Policy obligates Falls Lake to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Ex. A to Compl. § II(A), Docket No. 1-2. The Salinas Express Policy further states that Falls Lake "will have the right and duty to defend any 'insured' against a 'suit' seeking such damages...." Id. However, the Salinas Express Policy provides that "[r]egardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most [Falls Lake] will pay for the total of all damages ... resulting from any one 'accident' is the Limit of Insurance for Covered Autos Liability Coverage shown in the Declarations." Id. at § II(C). The "Limit of Insurance for Covered Autos Liability Coverage" is set at $1,000,000.00. Further, "[a]ll 'bodily injury' [and] 'property damage' ... resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one 'accident'." Id. Finally, the Salinas Express Policy asserts that "[n]o one will be entitled to receive duplicate payments for the same elements of 'loss'" under this plan. Id.

### III. The Instant Action

After the underlying personal injury action was initiated by Lester, Falls Lake commenced this action, requesting a declaratory judgment that it does not have the obligation to defend Martinez, Salinas Express, or SMC, or indemnify the parties for any judgment that they might be required to pay in the underlying personal injury action. According to the complaint, United has also asserted that it has no duty to defend or indemnify the defendants in the underlying personal injury action.

Lester and Shifflett each filed answers to the complaint, in which they assert counterclaims that Falls Lake has a combined exposure of $2,000,000.00 in connection with the

3

underlying personal injury action. Specifically, they argue that the limit of insurance in the Salinas Express Policy is $1,000,000.00 per covered auto, and that both the Salinas Express Tractor and the SMC Tractor were covered autos, for a combined exposure of $2,000,000.00 in connection "with the accident at issue" in the underlying personal injury action. Lester Answer at 11, Docket No. 21; see also Shifflett Answer at 7, Docket No. 23 ("The [Salinas Express] Policy affords $1,000,000 of primary liability coverage to the Salinas Express Tractor and an additional $1,000,000 of primary liability coverage to the SMC Tractor, as an additional covered auto[.]"). Falls Lake subsequently moved for partial dismissal of both counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as a motion to stay the underlying personal injury action while the instant action is pending. The court held a hearing on the motions on July 19, 2015. The motions have been fully briefed and are now ripe for disposition.

## Standard of Review

In considering a motion to dismiss a counterclaim, the court "applies the same standard of review that would be applied to a Rule 12(b)(6) motion to dismiss a complaint." First Data Merch. Servs. Corp. v. SecurityMetrics, Inc., No. RDB–12–2568, 2013 WL 6234598, at *3 (D. Md. Nov. 13, 2013). "To survive the motion, a complaint (or counterclaim, as is the case here) must contain sufficient facts to state a claim that is 'plausible on its face.'" E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court must "construe the [counterclaim] in the light most favorable to the [claimant], read the [counterclaim] as a whole, and take the facts asserted therein as true." Fisher v. Va. Elec. & Power Co., 258 F. Supp. 2d 445, 447 (E.D. Va. 2003) (quoting Storey v. Patient First Corp., 207 F. Supp. 2d 431, 439-40 (E.D. Va. 2002)). As such, the court should deny a motion to dismiss unless "it appears beyond doubt that the [claimant] can

4

prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## Discussion

I. **Falls Lake's Motions For Partial Dismissal**

The parties agree that Texas law governs the interpretation of the Salinas Express Policy, as the contract was issued in Texas to Salinas Express, a Texas entity. See Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 419 (4th Cir. 2004) (finding that, in Virginia, "an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts," and any disputes "concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made.").

In construing a contract, the court's primary concern is to "ascertain the intentions of the parties as expressed in the document." Amedisys, Inc. v. Kingwood Home Health Care, LLC, 437 S.W.3d 507, 514 (Tex. 2014). Courts begin the analysis with the language of the contract, which is the best representation of what the parties mutually intended. Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118, 126 (Tex. 2010). Unless the policy dictates otherwise, words and phrases are given their ordinary and accepted meaning. Id.

When construing an insurance policy, the court should be mindful of other courts' interpretations of policy language that is identical or very similar to the policy language at issue. Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 824 (Tex. 1997). As such, "[c]ourts usually strive for uniformity in construing insurance provisions, especially where … the contract provisions at issue are identical across the jurisdictions." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 522 (Tex. 1995); see also Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 496-97 (Tex. 2008) ("We have repeatedly stressed the importance of

5

uniformity 'when identical insurance provisions will necessarily be interpreted in various jurisdictions.'" (quoting Cowan, 945 S.W.2d at 824)).

Lester and Shifflett both interpret the limit of insurance provision to provide for a $1,000,000.00 limit per covered vehicle, so that Falls Lake has a total liability exposure of $2,000,000.00 for the Salinas Express Tractor and the SMC Tractor. Falls Lake offers a conflicting construction that the limit of insurance provision provides for a $1,000,000.00 limit per accident. "If only one party's construction is reasonable, the policy is unambiguous and the court will adopt that party's construction." RSUI Indem. Co. v. The Lynd Co., 466 S.W.3d 113, 118 (Tex. 2015). "An ambiguity does not arise simply because the parties offer conflicting interpretations." Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951). However, if both constructions present reasonable interpretations of the policy's language, the court must conclude that the policy is ambiguous, Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997), and "must resolve the uncertainty by adopting the construction that most favors the insured[,]" Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc., 811 S.W.2d 522, 555 (Tex. 1991). This is true "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." Id. Thus, the court's task in this case is to determine whether Lester and Shifflett's interpretation of the limit of insurance provision is reasonable. Hudson Energy Co., Inc., 811 S.W.2d at 555. If so, the court must enforce that construction, even if Falls Lake's construction is more reasonable. RSUI Indem. Co., 466 S.W.3d at 119.

The court does not believe that Lester and Shifflett's construction of the limit of insurance provision is reasonable. In Lucero, Jr. v. Northland Insurance Co., the Supreme Court of New Mexico interpreted identical liability coverage and limit of insurance coverage

6

provisions. See 346 P.3d 1154, 1156-57 (N.M. 2015). However, the "Schedule of Coverages and Covered Autos" in the declarations page explicitly provided that the policy limited liability coverage to a maximum of "$1,000,000 each 'accident.'" Id. at 1156. Despite the plaintiff's argument that the policy provided $1,000,000.00 in liability coverage for each "covered auto" involved in any one accident, for a total policy limit of $2,000,000.00, the Court held that the limitation was for each accident regardless of the number of insured vehicles involved. Id. at 1161.

Lester and Shifflett argue that the key distinction in Lucero is that the limit of insurance amount was only listed once in the declarations page. In the Salinas Express Policy, the $1,000,000.00 limit is listed next to each vehicle in the "Schedule of Equipment" page that is referred to in the declarations page. Ex. A to Compl. at 26, Docket No. 1-2. The court, however, does not believe that such distinction makes Lester and Shifflett's construction of the Salinas Express Policy reasonable, viewing the document as a whole. In fact, the Court in Lucero read the liability coverage, the limit of insurance coverage, and the declarations page together in reaching its decision. 346 P.3d at 1157. This comprehensive reading of an insurance policy is consistent with Texas law. See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994) (noting that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions"). Moreover, "[e]ven ... if there were reasonable grounds for disagreement over the terms of the Declarations page, language in the body of the policy settles the matter." Id. at 1158. The same can be said in this case, as the parties clearly disagree as to the interpretation of the liability limits in the declarations page in the Salinas Express Policy. The court notes that the Salinas Express Policy explicitly states that the limit on insurance for one accident is "[r]egardless of the number of covered 'autos' ... or

7

vehicles involved in the 'accident'...." Ex. A to Compl. § II(C). Such language would be meaningless if the Salinas Express Policy could reasonably be read to provide for $1,000,000.00 in coverage for each covered auto. Under Texas law, the court should strive to give effect to all of the words and provisions. Gilbert Tex. Constr., L.P., 327 S.W.3d at 126 ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless."). Therefore, the court concludes that Lester and Shifflett's interpretation of the limit on insurance coverage in the Salinas Express Policy "does not find support in the language of the policy." Lucero, 346 P.3d at 1158.

In addition, the Court in Lucero observed that "other jurisdictions interpreting similar insurance clauses have reached a similar conclusion." 346 P.3d at 1158. Under Texas law, this court should strive for uniformity in construing insurance provisions. See Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 496-97 (Tex. 2008) ("We have repeatedly stressed the importance of uniformity 'when identical insurance provisions will necessarily be interpreted in various jurisdictions.'" (quoting Cowan, 945 S.W.2d at 824)). Furthermore, it appears that these provisions are intended to effectuate an "established custom in the insurance industry ... where the intent is to limit liability coverage to a single amount, even though multiple insured vehicles are involved in an accident." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 36 (Fla. 2000). The court believes both that the need for uniformity among jurisdictions and the industry custom for limiting liability to a single accident provide additional support to its finding that Lester and Shifflett's construction of the limit of insurance coverage in the Salinas Express Policy is unreasonable. As such, the only reasonable interpretation of § II(C) in the Salinas Express Policy is a per-accident limit of liability, regardless of the number of covered autos involved in the

8

accident.[1] As only Falls Lake's interpretation is reasonable, the court concludes that the Salinas Express Policy is unambiguous, and the court will adopt Falls Lake's construction. Accordingly, Falls Lake's motions for partial dismissal will be granted.

II.  **Falls Lake's Motion to Stay**

As regards to Falls Lake's motion to stay, the court concludes that the motion must be denied at this time. Stated succinctly, the court believes that there is substantial disagreement among the multitude of parties as to whether a stay should be imposed and, if so, which matters should be stayed and which matters should go forward. Unless all the parties are able to agree on a global schedule that provides both for the underlying personal injury action and the declaratory judgment action, no stay will be imposed. Accordingly, Falls Lake's motion to stay will be denied.

### Conclusion

For the foregoing reasons, Falls Lake's motions for partial dismissal will be granted, and its motion to stay the underlying personal injury action will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 1st day of August, 2016.

/s/ Glen Conrad
Chief United States District Judge

---

[1] In so holding, the court offers no opinion as to whether one or two accidents occurred on October 26, 2015, as that issue is not properly before it on the motions for partial dismissal. In other words, neither Lester's nor Shifflett's counterclaim provide any factual allegations as to whether more than one accident occurred. Instead, their counterclaims are premised on the argument that the Salinas Express Tractor and the SMC Tractor were both covered autos under the Salinas Express Policy, and that there is a $1,000,000.00 policy limit for each covered auto.