CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 22 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FALLS LAKE NATIONAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 7:16CV00075 |
| v. | ) **MEMORANDUM OPINION** |
| ISRAEL MARTINEZ, JR., et al., | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendants. | ) |

In this insurance coverage dispute, Falls Lake National Insurance Company ("Falls Lake") seeks a declaratory judgment that it has no obligation to indemnify Israel Martinez, Jr., Salinas Express, LLC ("Salinas Express"), or SMC Transport, LLC ("SMC") in connection with a personal injury action that Brandon Lester filed against Martinez, Salinas Express, SMC, and others in this court. See Lester v. SMC Transport, LLC, No. 7:15CV00665 (W.D. Va.) (the "underlying personal injury action"). The case is presently before the court on cross-motions for partial summary judgment filed by Falls Lake, Lester, and United Specialty Insurance Company ("United Specialty"). For the reasons set forth below, Falls Lake's motion will be granted in part and denied in part, Lester's motion will be granted, and United Specialty's motion will be denied.

**Background**

I.  **The Underlying Personal Injury Action**

Before sunrise on October 26, 2015, Lester was traveling southbound on Interstate 81 in Botetourt County. At approximately the same time, Martinez was operating a semi-tractor owned by and registered to SMC (the "SMC Tractor"), a commercial motor carrier based in Texas. The SMC Tractor had been driven to Virginia to pick up a disabled semi-tractor utilized

by Salinas Express (the "Salinas Express Tractor"), another commercial motor carrier based in Texas. The disabled tractor had been left in the parking lot of a rest stop adjacent to the interstate.

Martinez, Roy Salinas ("Roy"), and Eddie Lozano used the SMC Tractor to tow a third tractor (the "Lozano Tractor") to Virginia, so that Lozano could deliver the goods that remained in the trailer attached to the disabled Salinas Express Tractor. Upon arriving at the rest stop, the Lozano Tractor was unhooked from the SMC Tractor and then used to deliver the remaining goods. The Salinas Express Tractor was then hooked up to the SMC Tractor, so that it could be towed back to Texas.

Just before 6:00 a.m., Martinez and Roy attempted to leave the rest stop in the SMC Tractor with the Salinas Express Tractor in tow. To do so, Martinez drove north, on the entrance ramp to the rest stop, so that he could make a U-turn onto southbound I-81. In attempting to make the U-turn, Martinez caused the SMC Tractor, towing the Salinas Express Tractor, to block at least the right lane of travel.

At the same time, Lester approached the entrance ramp to the rest stop while traveling in the right lane. He was unable to stop or maneuver his vehicle in time to avoid hitting the SMC Tractor. A second vehicle, operated by Anthony Shifflett, then struck Lester's vehicle.

On December 9, 2015, Lester filed the underlying personal injury action against SMC, Martinez, Salinas Express, and Shifflett. On September 2, 2016, the court ruled on a number of motions filed by the parties in that action, including Lester's motion for partial summary judgment. As is relevant in the instant action, the court ruled that Martinez and Roy were employees of Salinas Express at the time of the accident, that they were acting within the scope of their employment, and, thus, that Salinas Express is "vicariously liable for [their] negligent conduct." Lester v. SMC Transport, LLC, No. 7:15CV00665, 2016 U.S. Dist. LEXIS 118946, at

2

*27-28 (W.D. Va. Sept. 2, 2016). Although Lester also moved for partial summary judgment on the issue of whether SMC is vicariously liable for the negligence of Martinez and Roy, the court denied that motion on the basis that a reasonable jury could find that Martinez and Roy were not agents of SMC.

## II. The Insurance Policies

### A. The Policy Issued by Falls Lake

At the time of the accident, Salinas Express was insured under a motor carrier liability policy issued by Falls Lake (the "Falls Lake Policy"), under which the Salinas Express Tractor was a "covered 'auto.'" The Falls Lake Policy obligates Falls Lake to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Falls Lake Motor Carrier Coverage Form § II(A), Docket No. 1-2. Section II(A)(1) of the Falls Lake Policy defines "Who Is An Insured." That section provides, in pertinent part, as follows:

> The following are "insureds":
>
> a.    You for any covered "auto".
>
> b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
>     (1)    The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".
>
>     (2)    Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.
>
> . . .
>
> e.    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.
>
> However, none of the following is an "insured":

3

> > (1) Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":
> >
> > > (a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance . . . .

Id. at § II(A)(1).

In addition to the scheduled vehicles for which the Falls Lake Policy provides coverage, the policy lists three types of vehicles which "are also covered 'autos' for Covered Autos Liability Coverage." Id. at § I(C). Those vehicles include "Temporary Substitute Autos," specifically:

> Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
>
> a. Breakdown;
>
> b. Repair;
>
> c. Servicing;
>
> d. "Loss"; or
>
> e. Destruction.

Id. at § I(C)(3).

### B. The Policy Issued by United Specialty

During the time period at issue, SMC was insured under a motor carrier liability policy issued by United Specialty (the "United Specialty Policy"). It is undisputed, however, that the SMC Tractor was not listed on the United Specialty Policy's schedule of covered autos at the time of the accident, and, thus, that it was not insured under that policy. Accordingly, there is no liability coverage under the United Specialty Policy for the underlying accident.

The United Specialty Policy contains an MCS-90 endorsement.[1] That endorsement provides, in pertinent part, as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (company) [United Specialty] agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured [SMC] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described [in] the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury or death of the insured's employees while engaged in the course of their employment or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.
>
> However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement . . . .

United Specialty MCS-90 Endorsement at 2, Docket No. 65-8.

### III. The Instant Action

After the underlying personal injury action was commenced by Lester, Falls Lake brought this action seeking a declaratory judgment that it does not have a duty to indemnify Salinas Express, Martinez, or SMC with respect to any claims asserted against them as a result of the accident. The declaratory judgment action is now before the court on cross-motions for

---

[1] "An MCS-90 endorsement is an endorsement added to a trucker's insurance policy to satisfy federal motor-carrier regulations requiring minimum levels of financial responsibility." Nat'l Specialty Ins. Co. v. Martin-Vegue, 644 F. App'x 900, 903 n.4 (11th Cir. 2016) (citing 49 U.S.C. § 31139(b); 49 C.F.R. § 387.15).

partial summary judgment filed by Lester, United Specialty, and Falls Lake. Lester urges the court to conclude that Salinas Express is entitled to liability coverage under the Falls Lake Policy. United Specialty urges the court to conclude that its insured, SMC, is entitled to liability coverage under the Falls Lake Policy. Falls Lake, on the other hand, moves the court to conclude that coverage is not owed to Salinas Express, SMC, Martinez, or Roy.[2]

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "When faced with cross-motions for summary judgment, [courts] consider each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Bacon v. City of Richmond, 475 F.3d 633, 636-37 (4th Cir. 2007). "The court must deny [the] motions if it finds that there is a genuine dispute of material fact, but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." Sky Angel U.S., LLC v. Discovery Commc'ns., LLC, 95 F. Supp. 3d 860, 869 (D. Md. 2015) (citation and internal quotation marks omitted).

## Discussion

### I. Applicable Law

Under Texas law, which the parties agree applies in the instant case, the interpretation of an insurance policy presents a question of law. Seahawk Liquidating Trust v. Certain

---

[2] The court notes that Roy is not named as a defendant in the underlying personal injury action.

Underwriters at Lloyds London, 810 F.3d 986, 990 (5th Cir. 2016). Courts interpret insurance policies using the same rules of construction applicable to other contracts. Tesoro Ref. & Mktg. Co., LLC v. Nat'l Union Fire Ins. Co., 833 F.3d 470, 474 (5th Cir. 2016) (citing American Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003)). The court's "primary concern" is "[e]ffectuating the parties' expressed intent." Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co., 267 S.W.3d 20, 23 (Tex. 2008). When a policy uses unambiguous language, the court "must enforce it as written." Id. "If, however, a contract is susceptible to more than one reasonable interpretation, [the court must] resolve any ambiguity in favor of coverage." Id. "Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning." Id.

## II. Coverage under the Falls Lake Policy

### A. Salinas Express

In their respective motions, Falls Lake and Lester dispute whether Salinas Express is entitled to indemnification under the Falls Lake Policy. Although Salinas Express is the named "insured" under the Falls Lake Policy and the Salinas Express Tractor is a "covered 'auto,'" Falls Lake argues that coverage is unavailable for Lester's injuries because they arose from an accident involving Lester's vehicle, the SMC Tractor, and Shifflett's vehicle, and did not "result[] from the ownership, maintenance or use of" the Salinas Express Tractor. See Falls Lake Policy § II(A) ("We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto'."). For the following reasons, the court disagrees with Falls Lake and concludes, as matter of law, that Salinas Express is entitled to coverage.

7

Under Texas law, the insuring language at issue is interpreted broadly. See Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr., 468 F.3d 857, 859-60 (5th Cir. 2006). "The term 'use' is the general catchall of the insuring clause, designed and construed to include all proper uses of the vehicle . . . ." State Farm Mut. Auto Ins. Co. v. Pan Am. Ins. Co., 437 S.W.2d 542, 545 (Tex. 1969). For liability to "arise out of" or "result from" the use of a covered motor vehicle, "a causal connection or relation must exist between the accident or injury and the use of the motor vehicle." Mid-Century Ins. Co. v. Lindsey, 997 S.W.2d 153, 156 (Tex. 1999); see also Lancer Ins. Co. v. Garcia Holiday Tours, 345 S.W.3d 50, 55 (Tex. 2011). This "is interpreted to mean that there is but-for causation, though not necessarily direct or proximate causation." Utica Nat'l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004). Moreover, "the use required is of the vehicle qua vehicle, rather than simply as an article of property." Lindsey, 997 S.W.2d at 156. If the vehicle at issue "is only the locational setting for an injury, the injury does not arise out of any use of the vehicle." Id.

In Lindsey, the Texas Supreme Court articulated a three-part test for determining whether an injury arises from the use of a motor vehicle for purposes of liability insurance coverage:

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, [and] (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

Id. at 157. The Supreme Court has since held that "the analysis is the same whether the policy requires that an injury 'result from' or 'arise out of' the covered auto's use." Lancer Ins. Co., 345 S.W.3d at 55.

The Supreme Court's decision in Lindsey "demonstrates just how broadly its test for 'use' is interpreted." Lincoln Gen. Ins., 468 F.3d at 859. That case involved a child who attempted to enter his parents' parked and locked truck through the truck's sliding rear window

8

to retrieve an article of clothing. Lindsey, 997 S.W.2d at 154. In so doing, the child accidentally touched a loaded shotgun resting in a gun rack mounted over the rear window, causing the gun to discharge and injure a passenger in another vehicle. Id. On these facts, the Supreme Court concluded that the passenger's injury "arose out of the use of the . . . truck as a matter of law." Id. at 158. The Court reasoned that the child's sole purpose was to gain entry into the truck, that his unorthodox method of entry was not an unexpected or unnatural use of the vehicle, and that it was the child's efforts to enter the vehicle that directly caused the gun to discharge and the nearby passenger to become injured. Id. Although the case was a "close" one, the Court ultimately held that the "truck 'produced' . . . the injury," and "was not merely the situs of activity, unrelated to any use of the truck that resulted in the accident."[3] Id. at 159.

Applying the Lindsey factors to the instant case, the court concludes that Lester's injuries resulted from the use of the Salinas Express Tractor. First, the accident occurred while the Salinas Express Tractor was being towed from the rest area. Using a vehicle in this manner is not "unexpected or unnatural." Lindsey, 997 S.W.2d at 158; see also State Farm Fire and Casualty Co. v. Pinson, 984 F.2d 610, 612 (4th Cir. 1993) (emphasizing that "a towed vehicle is a 'used' vehicle") (collecting cases). Instead, it is part of the inherent nature of a vehicle. Accordingly, the first factor is met.

The second factor is whether the accident arose within the vehicle's natural territorial limits before its use terminated. See Lindsey, 997 S.W.2d at 157. Because the accident occurred on a roadway, while the Salinas Express Tractor was being towed by the SMC Tractor, the court

---

[3] "Where a vehicle is a mere situs of injury, fungible with any other situs, it is not being 'used.'" Lincoln Gen. Ins., 468 F.3d 857, 860 n.2. For instance, in Lancer Insurance Company v. Garcia Holiday Tours, the Texas Supreme Court ruled that the transmission of tuberculosis from a bus driver to his passengers "did not result from the vehicle's use but rather from the bus company's use of an unhealthy driver." 345 S.W.3d at 59. The Court reasoned that "the bus was the mere physical situs of the exposure to the infected person, which could have occurred anywhere." Id. at 58.

9

concludes that this factor is also satisfied. The mere fact that Lester's vehicle made contact with the SMC Tractor, rather than the Salinas Express Tractor, is not dispositive. See, e.g., State & County Mut. Fire Ins. Co. v. Trinity Universal Ins. Cos., 35 S.W.3d 278, 282 (Tex. App. El Paso 8th Dist. 2000) (holding that an accident "unmistakably" occurred within the natural territory of an insured vehicle where a woman "died on a roadway," after jumping out of the vehicle and being struck by another car); see also Lindsey, 997 S.W.2d at 160 (finding this factor satisfied even though the injuries occurred in an adjacent vehicle).

The third factor is whether the covered vehicle "produce[d] the injury" in question. Lindsey, 997 S.W.2d at 157. As discussed above, the causation inquiry in this context involves "but-for causation, though not necessarily direct or proximate causation." Utica Nat'l Ins. Co., 141 S.W.3d at 203. A but-for cause is "one without which the event would not have occurred." Transcon. Ins. Co. v. Crump, 330 S.W.3d 211, 223 (Tex. 2010).

Based on the undisputed evidence in the instant case, the court concludes that the Salinas Express Tractor produced the injuries at issue. The underlying accident would not have occurred if the Salinas Express Tractor had not broken down along the interstate and needed to be towed from the rest stop. The Salinas Express Tractor was connected to the SMC Tractor at the time of the accident, and the presence and positioning of the Salinas Express Tractor at the rest stop resulted in the effort to make a U-Turn from the entrance ramp onto southbound I-81. While Falls Lake emphasizes that Lester's vehicle only made contact with the SMC Tractor and that the Salinas Express Tractor sustained no damage, the court finds these facts to be of no consequence, especially in light of Lindsey. In Lindsey, even though a shotgun inflicted the injury, the Texas Supreme Court found that the insured truck "produced" the injury, since the accident would not have occurred but for the child's efforts to gain entry to the truck. Lindsey, 997 S.W.2d at 160. Likewise, in this case, while Lester's vehicle struck the SMC Tractor, the disabled Salinas

10

Express Tractor "produced" Lester's injuries, since the accident would not have occurred but for the actions undertaken to remove the disabled truck from the rest stop.

For these reasons, the court concludes that the accident at issue resulted from the use of the Salinas Express Tractor, and, thus, that Salinas Express is entitled to liability coverage under the Falls Lake Policy. Accordingly, the court will deny Falls Lake's motion for partial summary judgment on this issue, and grant Lester's motion for partial summary judgment.[4]

### B. SMC

The parties also dispute whether SMC is entitled to coverage under the Falls Lake Policy. United Specialty, SMC's insurer, argues that SMC is an additional "insured" under the Falls Lake Policy, and that the SMC Tractor is a "covered 'auto'" under that policy. For the following reasons, the court disagrees with United Specialty and concludes, as a matter of law, that SMC is not entitled to coverage under the Falls Lake Policy.

First, SMC is not an additional "insured" under the Falls Lake Policy. In arguing to the contrary, SMC cites to subsection (e) of § II(A)(1), which provides that the following are "insureds": "Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." Falls Lake Motor Carrier Coverage Form § II(A)(1)(e), Docket No. 1-2. SMC contends that its "only exposure in the underlying suit is based on vicarious liability," and that "it is very probable that . . . any vicarious liability would have to flow through the named insured Salinas Express." United Specialty's Br. in Response to Falls Lake's Mot. for Partial Summ. J. 10, Docket No. 67. In response, Falls Lake and Lester dispute this assertion and argue that even

---

[4] In addition to arguing that Salinas Express is not entitled to coverage, Falls Lake argues that coverage is not owed to Salinas Express' employees, Martinez and Roy. In light of the court's conclusion that Salinas Express is entitled to coverage under the Falls Lake Policy, and its earlier ruling that Salinas Express is vicariously liable for the negligent conduct of Martinez and Roy, the issue of whether Martinez and Roy are also entitled to coverage is ultimately of no consequence. In any event, this issue involves a dispute of material fact regarding the ownership of the Salinas Express Tractor and whether Martinez and Roy were acting on behalf of the owner. Accordingly, it cannot be resolved at this stage of the proceedings.

11

if SMC could be deemed an "insured" under subsection (e), the subsequent "motor carrier" exclusion precludes coverage for SMC. The court agrees with Falls Lake and Lester.

After defining "Who Is an Insured," the Falls Lake Policy excludes certain motor carriers from the definition. As is relevant in the instant case, the policy provides that "none of the following is an 'insured'":

> (1) Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":
>
>    (a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

Falls Lake Motor Carrier Coverage Form § II(A)(1), Docket No. 1-2. "Accordingly, coverage is extended under the policy to non-employee [motor carriers] only if their insurance policies offer reciprocal coverage." Ill. Nat'l Ins. Co. v. Temian, 779 F. Supp. 2d 921, 926 (N.D. Ind. 2011).

In this case, it is undisputed that SMC is a "motor carrier" subject to motor carrier insurance requirements. Moreover, the court agrees with Falls Lake and Lester that SMC met those requirements by means other than "'auto' liability insurance." Indeed, it is undisputed that the SMC Tractor was not insured at the time of the accident under any policy of insurance procured by SMC. Although the United Specialty Policy issued to SMC contains an MCS-90 endorsement, that endorsement "does not provide insurance coverage." Real Legacy Assurance Co. v. Santori Trucking, Inc., 560 F. Supp. 2d 143, 147 (D.P.R. 2008) (collecting cases); see also Carolina Casualty Ins. Co. v. Yeates, 584 F.3d 868, 884 (10th Cir. 2009) (emphasizing that "the MCS-90 endorsement is not an ordinary insurance provision to protect the insured") (citation and internal quotations marks omitted). Instead, "[t]he endorsement creates a suretyship by the insurer to protect the public when the underlying insurance policy otherwise provides no coverage," and "carries with it a right to reimbursement [from the insured]." Real Legacy

12

Assurance Co., 560 F. Supp. 2d at 147-148; see also Canal Ins. Co. v. Carolina Cas. Ins. Co., 59 F.3d 281, 283 (1st Cir. 1995) (holding that the endorsement is a "suretyship by the insurance carrier to protect the public -- a safety net -- but not insurance"). Thus, "[w]here as here, a policy does not provide coverage for nonlisted vehicles except to third-party members of the public through operation of [the] form endorsement . . . , the policy provides no coverage for purposes of disputes among insurers over ultimate liability." Canal Ins. Co. v. First Gen. Ins. Co., 889 F.2d 604, 611 (5th Cir. 1989). Accordingly, because SMC met its motor carrier insurance requirements by a means other than "'auto' liability insurance," SMC is not an "insured" under the Falls Lake Policy. Falls Lake Policy § II(A)(1), Docket No. 1-2.

Additionally, the court agrees with Falls Lake and Lester that the SMC Tractor is not a "covered 'auto'" under the Falls Lake Policy. In arguing to the contrary, United Specialty relies on § I(C) of the Falls Lake Policy, which provides that the following types of vehicles are "also covered 'autos' for Covered Autos Liability Coverage":

> Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered 'auto' you own that is out of service because of its:
>
> a. Breakdown;
>
> b. Repair;
>
> c. Servicing;
>
> d. "Loss"; or
>
> e. Destruction.

Id. at § I(C). United Specialty emphasizes that it is undisputed that the Salinas Express Tractor was "broken down," and that its "broken down condition was the sole reason for Martinez, Roy Salinas, Eddie Lozano . . . and Salinas Express to be using the SMC truck." United Specialty's Br. in Response to Falls Lake's Mot. for Partial Summ. J. 8-9, Docket No. 67.

13

Even assuming that United Specialty's recitation of the "undisputed" evidence is correct, the mere fact that the SMC Tractor was used to tow the Salinas Express Tractor from the rest stop does not mean that it was a "temporary substitute" for the disabled vehicle. Because the term "temporary substitute" is not defined in the Falls Lake Policy, the court must consider its "ordinary, everyday meaning." Progressive County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 552 (Tex. 2003). The plain and ordinary meaning of the word "substitute" is a "a person or thing that takes the place or function of another." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/substitute (last visited Dec. 20, 2016). Thus, the court believes that the term "temporary substitute" clearly refers to a vehicle that is used in place of an insured vehicle that is broken down or otherwise in need of repair. Accordingly, "in order for coverage to attach in this case, the temporary substitute vehicle must have been performing a function that the disabled insured vehicle would have been performing but for its temporary disability." Duncan Auto Realty, Ltd. v. Allstate Ins. Co., 754 So.2d 863, 865 (Fla. Ct. App. 3d Dist. 2000) (citing Couch on Insurance §§ 117:83 & 117.89 (3d rev. ed. 1997)); see also Stonehocker v. Gulf Ins. Co., 368 P.3d 1187, 1194 (Mont. 2016) (emphasizing that "[t]he critical focus under the temporary substitute auto provision is whether the pickup truck was in fact being used as a substitute for the Suburban").

Applying this standard, the court fails to see how the SMC Tractor could be deemed a "temporary substitute" for the Salinas Express Tractor. Instead, the only "temporary substitute" was the tractor used by Eddie Lozano to complete the delivery of goods that the Salinas Express Tractor was supposed to make. By completing the interstate job in question, the Lozano Tractor took the place of the disabled Salinas Express Tractor and performed the function that it would have performed but for its temporary disability. The same cannot be said for the SMC

14

Tractor, which was merely used as a tow truck. Accordingly, the SMC Tractor is not a "covered 'auto'" and SMC is not entitled to coverage under the Falls Lake Policy.

### Conclusion

For the reasons stated, Falls Lake's motion for partial summary judgment will be granted in part and denied in part, Lester's motion for partial summary judgment will be granted, and United Specialty's motion for partial summary judgment will be denied. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 22nd day of December, 2016.

_____
Chief United States District Judge